J. W. KEY, Admr., *et al.* *v.* ANDREW HARRIS *et al.*:

*(Nashville.* December Term, 1905.)

1. **APPEALS.** To supreme court from decree of county court under insolvent bill to sell lands of decedent to pay debts, when.

Where, after the proper suggestion of insolvency of a decedent's estate not exceeding the value of one thousand dollars, a bill is filed in the county court to sell land to pay the debts, and the proceedings are conducted according to the chancery practice, and not according to the peculiar procedure prescribed by sections 4070 to 4101, inclusive, of Shannon's Code for the conduct of such suits in the county court, an appeal from the decree of the county court lies directly to the supreme court under the express provisions of section 4907 of Shannon's Code, and not to the circuit court, although the county court has exclusive jurisdiction of such suit. (*Post, pp.* 167-169.)

Code cited and construed: Secs. 4003, 4066, 4070-4102, 4879, 4880, 4907, 4908, 6071, 6112 (S.); secs. 3108, 3170, 3175-3207, 3864, 3865, 3891, 3892, 5005, 5045 (M. & V.); secs. 2270, 2326, 2330-2362, 3147, 3148, 3172, 3173, 4233, 4302 (T. & S. and 1858).

Cases cited and approved: Burgner v. Burgner, 11 Heis., 731; Norville v. Cobb, 1 Lea, 467; Linnville v. Darby, 1 Bax., 307; Phillips v. Hoffman, 5 Cold., 251; Davidson, Admr., in the Matter of John B. Bates' Estate, 2 Heis., 533.

2. **STATUTES.** Act conferring on county courts jurisdiction concurrent with the chancery and circuit courts to sell lands of decedents does not impliedly repeal special legislation for administration of insolvent estates.

The statute (Acts 1873, ch. 64, reproduced in Shannon's Code, secs. 4067 and 6028) conferring on the county courts concurrent jurisdiction with the chancery and circuit courts to sell real estate of decedents and for distribution or partition, and

116 Tenn.—11

providing that the mode of procedure in such cases   in the county court shall conform in every respect to the rules and regulations for the conduct of similar causes in the chancery and circuit courts, does not impliedly repeal the special legislation contained in the. Code for the administration of insolvent estates, and does not interfere with the jurisdiction of the subject as distributed between the chancery and county courts. (*Post, pp.* 167, 168, 169, 170.)

Acts cited and construed:   1873, ch. 64.

Code cited and construed:   Secs. 4067, 6028 (S); secs. 3172, 4981 (M. & V.).

Case cited and approved:   Zickler v. Bank, 104 Tenn., 277, 293-301.

3.  **CONTRACTS.** No compensation for services by one for another near relative in family relation, unless there is an express contract or one implied from the exceptional circumstances.

Where near relatives live together as members of the same family, and services are performed by one for the other, it will be presumed that no charge was intended to be made; and in order to raise a debt out of such circumstances, the evidence must show expressly that a contract was entered into, or the circumstances or origin of the services must be so exceptional as to rebut the presumption.  (*Post, pp.* 170, 171.)

Cases cited and construed:   Taylor v. Lincumfelter, 1 Lea, 83, and citations; Gorrell v. Taylor, 107 Tenn., 568, and citations.

4.  **SAME.** Compensation for services rendered an idiotic and helpless sister.

But where a sister claims compensation for services rendered for a deceased sister who had been almost an idiot for her entire life, and for a number of years almost as helpless as a baby, and wholly an object of care, and a burden upon the labor and resources of the claimant who supplied all the wants of the deceased and took personal care of her, such claimant is entitled to such compensation the deceased would have accorded

Key v. Harris,

claimant, if she had acquired full possession of her mental faculties before death, and had possessed an ordinary sense of justice. (*Post, pp.* 165-167, 171, 172.)

5. **SAME. Same. Compensation for services sustained on the ground of necessaries.**

Compensation may be allowed for services, care, and support. for a deceased idiotic and helpless sister on the ground of necessaries. (*Post, pp.* 172)

Case cited and approved: Waldron v. Davis (N. J. Err. & App.), 58 Atl., 293, 66 L. R. A., 591.

6. **SAME. Same. Amount for services fixed by supreme court different from that allowed by court of chancery appeals.**

The supreme court may fix the amount of compensation to be allowed for services different from that found and allowed by the court of chancery appeals. (*Post, p.* 172.)

---

FROM OVERTON.

---

Appeal from the County Court of Overton County.— J. N. CANNON, County Judge.

A. H. ROBERTS, for complainant.

E. D. WHITE and E. A. QUARLES, for defendants.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed in the county court of Overton county by the administrator of the estate of Martha Harris and by Tennessee Harris, a creditor.

The bill alleged in substance that Martha Harris had died intestate, leaving surviving her as her only heirs at law the complainant, Tennessee Harris, her sister, and defendants, who are the children of deceased's brothers and sisters; that the deceased was indebted to complainant Tennessee Harris in the sum of $615.40 for services performed and for burial expenses and for taxes paid, and that the insolvency of the estate had been duly suggested before the clerk of the county court; that the deceased died the owner of a one-half interest in the tract of land described; that the one-half interest of the deceased was worth not exceeding $250; and that it was necessary to sell this land for the payment of the above-mentioned debts.

The prayer of the bill was that the estate be wound up as an insolvent estate in the county court.

Some of the defendants filed answers, and others suffered an order *pro confesso* to be taken against them.

The defense made by those who filed answers consisted in a denial of the debt set up in the bill and also a claim that there was personalty.

The county court directed a reference to be made to its clerk for a report on debts and assets.

The clerk reported that there was due Tennessee Harris $624 for services, $10 for burial expenses, and $11.40 for taxes paid, aggregating $645.40; that from this sum there should be deducted $30 for rent of land, leaving a balance due of $615.40.

On exceptions filed the judgment of the county court

disallowed the item of $624 and the item for taxes, but allowed $10 for burial expenses. The decree of the county court thereupon directed that the whole tract of land should be sold for the payment of the $10, and that of the proceeds, after paying the $10, the residue of the funds should be divided among the heirs at law of Martha Harris.

From the foregoing decree the complainants prayed an appeal to this court. Here the cause was referred to the court of chancery appeals.

In that court a motion was made to dismiss the appeal for want of jurisdiction. That court sustained the motion on the ground that the county court had exclusive jurisdiction of the case, and that therefore the appeal should have been prosecuted to the circuit court, and not to the supreme court.

The court of chancery appeals, to save time for the parties in the event this court should take a different view upon the question of jurisdiction, found the facts pertaining to the controversy. Those facts, as they bear upon the large claim, make a peculiarly touching story of sacrifices made by the complainant, Tennessee Harris, in taking care of her afflicted sister.

These facts, as found by the court of chancery appeals, are as follows:

"We find that Martha Harris was a woman of very weak mind, if not an idiot, and had been so during her entire life. For a number of years she was almost helpless, not able to move from her chair, or bed, without

assistance. She was physically very infirm, to an extent that she required almost constant care and attention of some one. She and Tennessee Harris lived on this little tract of land, which is described as poor and rough, and which had been given them by their deceased father in his will.

"For several years a deceased brother lived on the same place, but all lived as one family. All the wants of this unfortunate sister were supplied by complainant Tennessee, who, from the proof, was tender, affectionate, and attentive to her. This complainant would plow in the fields, and hoe and gather the crops—in fact, not only do her duty as to keeping house, but did all kinds of manual labor—in order to make a living for herself and invalid sister, who was powerless to do anything, by reason of physical debilities and having no mind. This complainant is fifty-three years old, being four years the senior of Martha, who, it is proven, was as helpless as a baby, and her sister had to wait on her as such.

"It is undisputed that Tennessee was the only one who looked after and waited on Martha. She had to bathe and dress her, and it required nearly all her time towards the last to wait on her.

"The brother of these ladies and his family, as stated to Tennessee, would look after Martha when she went out to work. . . .

"That she worked faithfully and took care of her afflicted sister is abundantly sustained, and that her services were reasonably worth from $2.50 to $3 per week.

Further, that, if it had not been for her, Martha would have been for a long time a charge on the county and in the poorhouse."

That court found that the account proven was reasonable. They also found that there was no personalty belonging to Martha Harris' estate.

But, as already stated, that court felt compelled to dismiss the case for want of jurisdiction.

The first question we shall consider is whether that court reached a correct conclusion upon this subject.

Prior to chapter 64, p. 100, of the Acts of 1873, to be presently noted with more particularity, the chancery, circuit, and county courts all had concurrent jurisdiction of the sale of lands of decedents for the payment of debts, after the exhaustion of the personal estate (Shannon's Code, secs. 4003, 6071, 6112; *Burgner* v. *Burgner,* 11 Heisk., 731; *Norville* v. *Coble,* 1 Lea, 467; *Linnville* v. *Darby,* 1 Baxt., 307), except where proceedings in insolvency were instituted. In respect of this latter class of cases exclusive jurisdiction was given to the county court of the administration of all estates not exceeding the value of $1,000. Shannon's Code, secs. 4066, 4102.

Sections 4070 to 4101, inclusive, laid down a peculiar form of procedure in the county court for the administration of such cases therein in respect of the filing of claims, the ascertainment of debts, the making of reports thereon, appeals from the action of the clerk on

such reports directly to the circuit court, the sale of land, and the distribution of proceeds.

But it has always been recognized that this peculiar procedure might be waived by any party who desired to institute proceedings in insolvency in the county court for the sale of real estate, and that the practice of the chancery court might be adopted and used instead.

In Shannon's Code, sec. 4880, it is provided: "In all cases in which the jurisdiction of the county court is concurrent with the circuit or chancery courts, or in which both parties consent, the appeal lies direct to the supreme court."

The preceding section (4879) reads: "Any person dissatisfied with the sentence, judgment or decree of the county court may pray an appeal to the circuit court of the county, unless it is otherwise expressly provided by this Code."

By section 4907 it is provided: "An appeal in the nature of a writ of error lies, at the instance of either party, from the judgment or decree of the court of chancery or of the county or circuit court in equity causes, in all cases tried according to the forms of chancery upon the same terms and subject to the same regulations as an appeal from similar judgments or decrees."

Section 4908 reads: "In all other cases determined in the county court, when either party is dissatisfied with the final decision, an appeal in the nature of a writ of error may be taken by him to the circuit court, or both parties consenting to the supreme court."

It is perceived that the general rule is that appeals from the county court lie to the circuit court. Section 4879. But this rule is subject to exceptions, under which an appeal lies directly to this court. One of these exceptions is when the jurisdiction of the county court is concurrent with the circuit or chancery courts; another, when both parties consent (section 4880); another is when the county court proceeds in an equity cause "according to the forms of chancery" (section 4907).

The present case falls under the latter exception—that is, under section 4907—since it appears that the proceedings in the county court followed the practice of the chancery court. Therefore an appeal could be prosecuted directly from the county court to this court.

If the proceedings in the county court had been according to sections 4070 to 4101, inclusive, the appeal would necessarily have been prosecuted to the circuit court. Such were evidently the cases of *Phillips, Adm'r,* v. *Hoffman,* 5 Cold., 251, and *Davidson, Adm'r, in the Matter of John B. Bates' Estates,* 2 Heisk., 533.

So, without regard to chapter 64, p. 100, of the Acts of 1873, we are of opinion that the court of chancery appeals erred in dismissing the appeal.

The act referred to is reproduced in Shannon's Code, secs. 4067 and 6028.

The act itself reads as follows:

"Section 1. That the county courts of this State shall have concurrent jurisdiction, with the chancery and

circuit courts to sell real estate of decedents and for distribution or partition.

"Sec. 2.   That the mode of procedure in such cases in the county courts shall conform in every respect to the rules and regulations laid down for the conduct of similar causes in the chancery and circuit courts.".

The language of this statute is very broad and general, but we do not think the legislature intended thereby to break down the special system of legislation contained in the Code for the administration of insolvent estates, or to interfere with the jurisdiction of the subject as distributed between the chancery and county courts. The rule is that a prior special system of legislation, or a special act for the benefit of a particular locality, is not repealed by a subsequent statute covering the general subject under which such prior special legislation falls, unless there is found in the subsequent act a direct indication of an intention to repeal such prior legislation, or unless there is a necessary inconsistency between the two acts.   *Zickler* v. *Union Bank and Trust Co.,* 104 Tenn., 277, 293-301, 57 S. W., 341.

We do not think, therefore, that the act of 1873 has any real bearing upon the question before us.

It remains to be determined whether the court of chancery appeals acted correctly in reporting in favor of the account of $624.40 claimed by the complainant.

The rule of law is that, where near relatives live together as members of the same family and services are performed by one for the other, it is presumed that no

charge is intended to be made. In order to raise a debt out of such circumstances, there must be evidence introduced showing expressly that a contract was entered into, or the circumstances or origin of the services must be so exceptional as to rebut the presumption.

The authorities upon this subject in this State are *Taylor* v. *Lincumfelter,* 1 Lea, 83, and cases cited, and *Gorrell* v. *Taylor,* 107 Tenn., 568, 64 S. W., 888, and cases cited. These cases also contain a reference to foreign authorities. There is a good statement of the principle to be found in 15 Am. and Eng. Ency. of Law (2d Ed.), page 1083. See also pages 1084 and 1085, and the authorities cited in the notes.

It is said that the reason underlying the rule is that family life abounds in acts of reciprocal kindness which tend to promote the comfort and convenience of the family, and that the introduction of commercial considerations into the relations of persons so closely bound together would expel this spirit of mutual beneficence and to that extent mar the family unity.

The reason of the law is the soul of the law. When that fails, the law itself fails.

In the present case, under the facts found, Martha Harris was never able at any time during her life to perform any portion of the reciprocal duties arising out of the family relation. She was wholly an object of care, and a burden upon the labor and resources of her sister. The latter was not only moved by sisterly affection, and by that feeling of compassion which would arise in the

breast of any one possessed of normal sympathies; but she was, in a sense, under a form of moral compulsion. The burden had been cast upon her, and she could not throw it off without a gross violation of duty and a shock to the moral sense.

We think, in disposing of complainant's rights, all of these considerations should be weighed. So viewing the matter, we are of the opinion that there should be allowed to the complainant such compensation as Martha Harris would have accorded her sister, if she had acquired full possession of her mental faculties before her death, and had possessed an ordinary sense of justice.

From this standpoint something must be conceded for the relationship and for natural sympathy and affection; but we do not think that any difference of opinion could arise over the conclusion that complainant Tennessee Harris was entitled to at least half of her claim of $624 for services.

We think, also, that the allowance may be sustained on the ground of necessaries. *Waldron* v. *Davis*, (N. J. Err. & App.), 58 Atl., 293, 66 L. R. A., 591, and authorities cited.

It results that the decree of the county court and of the court of chancery appeals must be reversed, and the cause remanded to the county court of Overton county, to the end that the half interest of Martha Harris in the land described in the bill may be sold for the payment of the sum of $312 allowed to Tennessee Harris for services, and also the $10 funeral expenses, and the costs of the cause.