ROBERT A. COTTON v. Estate of MRS. LULA POL-
LARD ROBERTS. —337 S. W. (2d) 776.

Middle Section at Nashville.   April 29, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

278

Courtney, Covington & Courtney, Henderson & Henderson, Franklin, for plaintiff.

Tyler Berry, Franklin, for Earl Beasley, Admr., for defendant.

HUMPHREYS, J. This is an appeal from a decree of the County Court of Williamson County, Tennessee, sustaining exceptions and dismissing the claim of Robert A. Cotton against the estate of Mrs. Lula Pollard Roberts, deceased.

The claim is for compensation for services rendered decedent, a widow, an aunt of claimant, from 1921 to the date of her death in June, 1956, under an alleged contract, expressed or implied. It is in six parts as follow: (1) Driving decedent's automobile when asked, from 1921 to 1932; valued at $50 a year for 12 years. (2) Transporting decedent in claimant's own automobile, from 1932 to death, at $150 a year. (3) Running errands, getting groceries, carrying laundry to be done, feeding livestock and milking on an average of two to four cows daily from

1931 to death at $1 per day for twenty-five years. (4) Hauling decedent's portion of crops from 1946 to death of decedent, valued at $100 per year. (5) $1 per night for six years and one month because claimant let one or more of his children stay in the house with his aunt at night. (6) For tending a flock of sheep belonging to decedent for twenty years, valued at $75 per year.

The administrator C. T. A. filed exceptions of nil debet, non-assumpsit, payment, and the statutes of limitation of three and six years. T. C. A. secs. 28-305, 28-309.

The County Judge sustained the first two exceptions and dismissed the claim. From this action the claimant has appealed and assigned as error the Court's action in this regard.

The record shows claimant moved to the 220 acre farm of the decedent and her sister, Miss Ida Pollard, in 1931, on a crop-sharing contract, living there until 1957, occupying a house located about 150 yards from the main residence where his aunts lived, and where his aunt, Mrs. Roberts, continued to live after the death of Miss Ida Pollard in 1946. The farm was rich and productive and claimant was in complete charge of its management and operation until Mrs. Roberts' death at ninety-three. At the time of Mrs. Lula Roberts' death she had been a widow for approximately 43 years.

She had three sisters, two of whom survived her. The sister predeceasing her left nephews and nieces, the claimant being one of the nephews. Mrs. Roberts died testate and by her will she left the claimant a larger individual portion of her property than she did any other beneficiary. The Quarterly County Court determined that 55% of the farm belonged to Mrs. Roberts and 45%

of it to Miss Ida Pollard. Under Mrs. Roberts' will claimant Cotton received a one-fifth undivided interest in the 45% of the farm owned by Miss Ida Pollard at her death. In addition, he took a ninth of one-third of Mrs. Roberts' 55% of the farm. She also bequeathed him a legacy of $1,000. After taxes and expenses the total estate of Mrs. Roberts was estimated at $22,518. The total claim of Cotton is $18,277.50.

Mrs. Roberts was an active, healthy, intelligent, honest, business-like person, anxious and willing to pay her debts. She and claimant had regular settlements of their farm business, when each party accounted to the other in full. Claimant made no claim to the decedent that she owed anything for any of the services in any of the categories at the time of these settlements, or otherwise, and did not tell decedent he was charging her for such services, or that he was rendering the same for a monetary reward. We find, further, that if decedent had recognized she was liable for said services or that they were being rendered with the intention of creating a liability on her part, she would have paid for the same at that time or would have made some other arrangement. The proof shows further that claimant kept no records of any of the alleged services from year to year, and that in arriving at the value of the services rendered he had to rely on his recollection and upon an estimation of the value thereof. Also, it is fairly inferable under the record that claimant prospered in his business relationships with his aunts, rearing and educating a family, equipping a comfortable home, acquiring all the necessary tools and equipment of his occupation, that of a farmer, including trucks, tractors, etc., some of which were acquired by his aunt's financial assistance or credit, operating an auto-

mobile, and achieving a respected position in the community, that of justice of peace. It further appears that claimant and his family and his aunts were closely attached by bonds of deep family affection, and though the houses in which they lived were approximately 150 yards apart, they lived together on the same farm virtually as one family.

We also find that claimant did perform valuable services on behalf of decedent in each one of the categories set forth in the claim. As to whether these services were rendered with the expectation of the parties that the same would be compensated for, or that the aunt should have known claimant expected to be compensated therefor, and if so, the manner of compensation, we reserve for further consideration later in this opinion.

■■ At this point a preliminary question must be resolved and that is, whether the testimony of claimant with respect to certain conversations with decedent can be considered in this Court, when objected to under sec. 24-105, T. C. A. The County Judge held the conversations could be considered and we agree with him. As to these, the claimant was called to testify by the administrator c. t. a in that such conversations were first developed by testimony on cross-examination, and the witness having been so called to testify by the administrator, the latter cannot object to the testimony thus elicited. Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780. This brings us to the question whether there was a contract expressed between the parties, and, if not, whether one can be implied in fact or law. We have no hesitancy in holding, as did the County Judge, that there was no contract expressed between the parties in words or writ-

ing. There is some evidence that deceased stated to two of claimant's witnesses that she was going to see that claimant was taken care of, and there is also testimony on the part of claimant with respect to a conversation with his aunt as to what he might do if he was unable to work out an agreement with the beneficiaries under her will to buy her farm at a reasonable price after her death. But this evidence is ambiguous, vague, and indefinite, and does not prove the elements of a contract. Actually it proves nothing except that the aunt appreciated her nephew's attention and expected to remember him in her will, which she did.

We come next to consider whether a contract can be implied under the facts and circumstances of this case. As to this, claimant cites Murray v. Grissim, 40 Tenn. App. 246, 290 S. W. (2d) 888, in which some of the law with respect to the implication of contracts on the rendition of valuable services is discussed. In that case it is stated on the authority of Williston on Contracts and the Restatement of the Law, Contracts, that from the mere rendering of services by one, and their acceptance by another, the law, without regard to the other's intent will ordinarily raise a quasi contract on his part to pay the reasonable value of such services; or the circumstances may warrant the triers of fact in finding an implied promise or contract on his part to pay such value. This statement, however, must be read and applied in the light of the facts of that case. In that case, the plaintiff, who was not related by affinity or consanguinity to the defendant, *had been requested by the defendant* to continue in the management of a 296 acre farm, used for operating a dairy, growing hay and other crops, and raising livestock and, acting upon this request, rendered

valuable services. The opinion in that case refers only to such portion of the rule as stated in Williston as relates to a case where the dealings are between persons who have no family relationship. Although Williston does state the rule as set forth in part in Murray v. Grissim, supra, he goes on to say:

"This inference (that a contract exists on account of the silent acceptance of the rendition of valuable services) is not usually drawn, however, where services are rendered another by a near relative or member of the family circle. Even though there is no blood relation between the parties, if the services are rendered by one who has been adopted as a member of the household, there will ordinarily be no inference of a promise to pay." Sec. 91A Williston on Contracts.

██ The rules of contract law applicable to a case of this kind may be fairly summarized thus: In order to make out an implied contract for the rendition of services, facts and circumstances must be shown which amount to a request for services, which is the offer to contract, and the performance of the requested services, which is the acceptance of the offer. As indicated, the request or offer need not be stated in words. Any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for the requested act, amounts to an offer. In the absence of facts and circumstances amounting to such a request, a contract may yet be implied when the facts and circumstances show that the person receiving the benefit of such work or services knew, or reasonably should have known, that the person doing the work ex-

pected to be paid and that the services were performed and accepted on this basis.

■ If the request is for a favor, and the services are rendered on that basis, there is no contract. Likewise, if the services are rendered with no intention at the time of rendition to charge therefor, and are accepted on that basis, there is no contract. Finally, as to services performed by a member of a family on behalf of another member of the same family, there is a presumption, which grows weaker as the relationship recedes, that the services are rendered gratuitously, from motives of affection and duty, and to entitle one in that situation to recover compensation therefor, the burden is upon him to overcome the presumption by showing either an expressed contract or such exceptional facts and circumstances as will establish an intention on the one part to charge and on the other part to pay, notwithstanding the relation of kinship. Gorrell v. Taylor, 107 Tenn. 568, 64 S. W. 888; Williston on Contracts, sec. 36, 91A.

■ Another rule applicable to this case is discussed in Brown v. Fuqua, 9 Tenn. App. 22, 26:

"Where one renders services to another in the hope or expectation of a legacy, devise, or other provision by will for his benefit, without any contract, express or implied, but relying solely upon the generosity of the person for whom such services were rendered, he cannot recover for such services because of the failure of such person to make such testamentary provision in his behalf."

■■ This being the law of the case, we are of the opinion the facts do not make out an implied contract.

First, it does not satisfactorily appear the aunt requested the performance of services other than as a favor, or gratuitously, on account of the family relationship nor at the time of the actual performance of the services, there was any intention on the part of the claimant to make charge therefor. We believe, from the record, that if his aunt had asked claimant how much she owed him for any of these services at the time they were rendered he would have told her ''nothing.'' Moreover, the aunt did not know and reasonably could not have known that claimant expected to be paid for the services, and did not accept the services on the basis she would pay therefor or that she would owe therefor. Finally, we find that although claimant and his aunt lived in separate houses, they were only 150 yards apart and located on the same farm and that because of the deep bonds of family affection subsisting between them, and their constant association with each other, and from all the other facts and circumstances, they constituted one family unit, and the presumption as stated in Gorrell v. Taylor, supra, applies to a degree, and the proof has not overcome this presumption.

We find that claimant performed the services in question without a contract expressed or implied, with the hope that his aunts would provide for him by will, and that upon being disappointed at the extent of that provision, he cannot as an afterthought, place a value upon these services and recover therefor. Accordingly, we overrule the assignments of error and affirm the judgment of the County Court of Williamson County.

Hickerson and Shriver, JJ., concur.