In re ESTATE OF Frances CLEVELAND, Administrator/Appellee,

v.

Jane GORDEN, Claimant/Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 29, 1992.

Permission to Appeal Denied by Supreme Court Aug. 24, 1992.

Dianna Baker Shew, Farris, Warfield & Kanaday, Nashville, for claimant/appellant.

Thomas E. Watts, Jr., Nashville, for administrator/appellee.

OPINION

KOCH, Judge.

This appeal involves a niece's efforts to obtain reimbursement from her deceased aunt's estate for expenditures made during her aunt's lifetime for medical and other expenses. The Davidson County Probate Court denied the niece's claim because the aunt had never specifically agreed to reimburse her niece for these expenditures. The niece has appealed. We have determined that the niece should be reimbursed for the expenditures made on her aunt's behalf and, therefore, reverse the probate court.

I.

Frances Cleveland was originally from Wartrace. She later moved to Nashville where she lived in a small house on Linden Avenue owned jointly with her sister. Ms. Cleveland supported herself with her social security benefits, some modest investment income, and the income from a trust fund established by a deceased sister. She lived alone in her later years, although her nieces and nephews occasionally stayed with her when she became ill.

Ms. Cleveland prepared a will in March 1976 leaving most of her antique furniture to her nephew and her two nieces, Elizabeth Watson of Raleigh, North Carolina and Jane C. Gorden of Houston, Texas. She left her house, several items of furniture, and a 1932 Ford automobile to the Bethsalem Presbyterian Church in Wartrace. She also named the church as the residuary beneficiary of her estate and designated Third National Bank as executor.

Ms. Cleveland became seriously ill in January 1984. One of her neighbors telephoned Ms. Gorden in Houston, and Ms. Gorden immediately traveled to Nashville because Ms. Cleveland was then 92–years–old and had no one else to take care of her. Ms. Gorden tried to look after her aunt for approximately three weeks but eventually realized that she was not up to the task because Ms. Cleveland required continuous skilled care. In February 1984, Ms. Gorden placed Ms. Cleveland in a nursing home in Shelbyville where she could be near her friends and other more distant relatives.

When her aunt entered the nursing home, Ms. Gorden discussed Ms. Cleveland's finances with the officers at the Third National Bank in Nashville where Ms. Cleveland maintained her accounts, including the trust account established for her by her sister. The bank officers advised Ms. Gorden that she would be able to obtain full reimbursement for any expenditures she made on her aunt's behalf if she opened a separate account for that purpose and maintained detailed expense records. Ms. Gorden accordingly opened a checking account and made arrangements with Third National Bank to deposit into that account all the income from a trust her mother had established for her years earlier.

Beginning in February 1984, Ms. Gorden used her own funds to pay most of her aunt's bills. These expenses included Ms. Cleveland's nursing home bills, her other medical expenses, the utilities for her Linden Avenue house, and occasional small personal sundries purchased for Ms. Cleveland. At the same time, all of Ms. Cleveland's social security benefits and other income, including rental income from her house, continued to be deposited into Ms. Cleveland's own account. Third National Bank occasionally deposited some of Ms. Cleveland's funds in the account maintained by Ms. Gorden when Ms. Gorden's own funds were insufficient to pay all of her aunt's expenses.

Ms. Cleveland's health stabilized after she entered the nursing home. Ms. Gorden visited her occasionally and received periodic reports from the nursing home about her aunt's health. Ms. Cleveland was aware that Ms. Gorden was using her own money to pay the nursing home bills and told a companion that Ms. Gorden "would get everything she had, if there was anything left." In January 1989, Ms. Cleveland finally gave Ms. Gorden a limited power of attorney authorizing Ms. Gorden to write checks on Ms. Cleveland's account to pay for her medical and living expenses.

Ms. Cleveland died in the nursing home on March 15, 1989. Her 1976 will was admitted to probate, and the probate court appointed a substitute administrator after Third National Bank declined to serve as executor. Ms. Gorden filed a timely claim seeking reimbursement for the $99,741 she spent on Ms. Cleveland's behalf from 1984 through 1989. She did not seek payment for all the other services she had rendered to her aunt. The administrator opposed the claim on the grounds that these expenditures were gifts since Ms. Cleveland had never agreed to reimburse her niece. The probate court agreed and denied the claim. Ms. Gorden has perfected this appeal.

## II.

This case requires us to decide whether Ms. Gorden was a capricious intermeddler who is not entitled to reimbursement for her expenditures on Ms. Cleveland's behalf because of her kinship with Ms. Cleveland. Far from being an intermeddler, we find that Ms. Gorden was acting out of a sense of family obligation. We also find, contrary to the probate court, that Ms. Cleveland knew that Ms. Gorden expected to be reimbursed for the expenditures she was making on Ms. Cleveland's behalf.

### A.

█ A person who voluntarily and officiously pays another's debts is not entitled to reimbursement. Restatement of Restitution §§ 2, 112 (1936); *see also Walker v. Walker*, 138 Tenn. 679, 681–82, 200 S.W. 825, 825 (1918) (person voluntarily paying another's debt without fraud, accident, mistake, or agreement is not entitled to subrogation); *Goodfriend v. United American*

*Bank,* 637 S.W.2d 870, 872 (Tenn.Ct.App. 1982) (a mere volunteer, intermeddler, or stranger, or one acting officiously in paying another's debt is not entitled to subrogation).

■ The general rule is not applicable when the payment is made under the compulsion of a moral obligation, in ignorance of the real state of facts, or under an erroneous impression of one's legal duty. *United States Fidelity & Guaranty Co. v. Elam,* 198 Tenn. 194, 209, 278 S.W.2d 693, 700 (1955). Thus, a person who pays another's debt because of a moral obligation is not an officious intermeddler and is entitled to reimbursement unless the payment was gratuitous.

■ A moral obligation is a duty that cannot be legally enforced. *Brownfield, Bowen, Bally & Sturtz v. Board of Educ.,* 56 Ohio App.2d 10, 381 N.E.2d 207, 208 (1977). It springs from the common sense of justice and fairness shared by all honorable persons and is more than a desire to be charitable or to give a gift. *Koike v. Board of Water Supply,* 44 Haw. 100 and 146, 352 P.2d 835, 839 (Haw.1960); *State ex rel. Singer v. Boos,* 44 Wis.2d 374, 171 N.W.2d 307, 312 (1969).

A moral obligation is perhaps best epitomized by the obligation family members commonly feel to support each other. Accordingly, the Tennessee Supreme Court has held that a woman who voluntarily undertook to care for her invalid sister

> was not only moved by sisterly affection, and by that feeling of compassion which would arise in the breast of any one possessed of normal sympathies; but she was, in a sense, under a form of moral compulsion. The burden had been cast on her, and she would not throw it off without a gross violation of duty and a shock of the moral sense.

*Kay v. Harris,* 116 Tenn. 161, 171–72, 92 S.W. 235, 237 (1905).

■ Even though they are not intermeddlers, family members are generally precluded from recovering for services provided to their close relatives because the law presumes that the services were a gratu-

itous part of the relationship when the relatives live together as part of the same family. *Gorrell v. Taylor,* 107 Tenn. 568, 570, 64 S.W. 888, 888 (1901); *Cotton v. Estate of Roberts,* 47 Tenn.App. 277, 285, 337 S.W.2d 776, 780 (1960). The reasons for the presumption are that "family life abounds in acts of reciprocal kindness which tend to promote the comfort and convenience of the family, and that the introduction of commercial considerations into the relations of persons so closely bound together would expel this spirit of mutual beneficence and to that extent mar family unity." *Kay v. Harris,* 116 Tenn. at 171, 92 S.W. at 237.

■ The presumption that family members' services are gratuitous is not conclusive. It can be rebutted by proof of an express agreement to pay for the services or by proof of circumstances showing that the relative accepting the benefit of the services knew or should have known that the relative performing them expected compensation or reimbursement. *Gorrell v. Taylor,* 107 Tenn. at 570, 64 S.W. at 888; *In re Estate of Hicks,* 510 S.W.2d 263, 265 (Tenn.Ct.App.1972).

### B.

■ We concur with the probate court's conclusion that Ms. Gorden did not intend her expenditures on Ms. Cleveland's behalf to be a gift. We do not concur, however, with its conclusion that the record does not contain proof of circumstances demonstrating that Ms. Cleveland knew or should have known that Ms. Gorden expected to be reimbursed.

The proof quickly dispels any notion that Ms. Gorden undertook to support her aunt gratuitously. The responsibility was thrust upon her, and she responded partly because of her family obligations and partly because no other relative was willing to take on the task. Ms. Cleveland's bankers told Ms. Gorden that she could be reimbursed, and from the outset, Ms. Gorden manifested her desire for reimbursement by maintaining detailed records of her expenditures as the bankers requested. While her arrangement with her aunt could

have been better structured with the assistance of counsel, Ms. Gorden should not be penalized for failing to seek legal advice when she decided to help Ms. Cleveland.

Ms. Gorden's assistance to her aunt went beyond what would normally have been expected of family members in similar circumstances. The ladies were not close relatives and had never lived together in a family relationship. *Gorrell v. Taylor*, 107 Tenn. at 570, 64 S.W. at 888. Since she was disabled, Ms. Cleveland was never able to return Ms. Gorden's kindness and was unable to perform her share of the normal familial responsibilities. *Kay v. Harris*, 116 Tenn. at 171, 92 S.W. at 237.

Even though the ladies had no express agreement to reimburse Ms. Gorden for her expenditures, Ms. Cleveland knew that Ms. Gorden was supporting her and accepted the support. *See Cotton v. Estate of Roberts*, 47 Tenn.App. at 283, 337 S.W.2d at 779. Since Ms. Cleveland had left Ms.

Gorden only a portion of her furniture, her statement that Ms. Gorden "would get everything she had, if there was anything left" indicates her expectation that Ms. Gorden would be compensated with a larger share of her estate.

### III.

We reverse the denial of Ms. Gorden's claim and remand the case to the probate court for further proceedings consistent with this opinion. We tax the costs to Frances Cleveland's estate for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.