# IN THE COURT OF APPEALS OF TENNESSEE

## FILED

October 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## AT KNOXVILLE

| | | |
|---|---|---|
| IN RE: | ) | |
| THE ESTATE OF FRED FILYAW, | ) | NO. 03A01-9810-PB-00360 |
| George Pritchett and Barbara Pritchett, | ) | |
| | ) | |
| Claimants/Appellants | ) | Appeal As Of Right From The |
| | ) | McMINN CO. PROBATE COURT |
| vs. | ) | |
| | ) | |
| HARVEY LUNSFORD, Executor, | ) | HON. JAMES F. WATSON, |
| | ) | JUDGE |
| Respondent/Appellee. | ) | |

**For the Appellants:**

John W. Cleveland
CLEVELAND & CLEVELAND
120 W. Morris Street
Sweetwater, TN 37874

**For the Appellee:**

Vance L. Baker, Jr.
114 Washington Ave.
P. O. Box 1085
Athens, TN 37371-1085

AFFIRMED                                                                 Swiney, J.

# O P I N I O N

This is an appeal from an Order of the Probate Court of McMinn County which denied

the claim of George and Barbara Pritchett ("Appellants") against the estate of Fred Filyaw for meals they

provided to the decedent over a period of eight years. The sole issue presented for appeal is whether the

Probate Court erred in denying Appellants' claim for reimbursement for meals furnished to Mr. Filyaw by the Appellants over the eight year period. We affirm the judgment of the Probate Court.

**BACKGROUND**

Appellant, George Pritchett, is a nephew of the decedent, Fred Filyaw. In 1985, when Mr. Filyaw learned that he had diabetes and required a special diet, Appellant, Barbara Pritchett, George Prittchett's wife, began preparing meals for him and delivering them to his home. Some time later, Mr. Filyaw began eating his evening meals at the Appellants' home. In 1992, Mr. Filyaw had a stroke and became incapacitated. Appellants instituted conservatorship proceedings, which Mr. Filyaw contested. The Court ordered a partial conservatorship in January 1993. Mr. Filyaw, being displeased about the conservatorship, changed his will in April 1993 to remove the Appellants as beneficiaries. The Court terminated the conservatorship in October 1993, but Mr. Filyaw remained angry at the Appellants for some time afterward and did not take his meals at their home.

The relationship between Mr. Filyaw and the Appellants apparently warmed somewhat as his health deteriorated and he needed more assistance. In 1995, George Pritchett graded Mr. Filyaw's driveway, and Barbara Pritchett purchased groceries, medical supplies, clothing and pest service for him. She also paid his phone and electric bills, and prepared meals for him for 14 weeks in 1995 when he was terminally ill. When Mr. Filyaw died in June 1995, he had not reimbursed the Appellants for these expenses and services. Appellants then discovered that Mr. Filyaw had not provided for reimbursement by the terms of his will. A will contest suit by the Appellants was unsuccessful.

Appellants then filed two claims in probate court against the estate: (1) $455.06, for groceries, medical supplies, clothing and pest service; and (2) "Oral contract with Fred Filyaw"for $50.00 per week, "two meals daily at my home from the doctor's prescribed diet, laundry service and groceries for his breakfast," for 26 weeks in 1985, 52 weeks in each of 1986, '87, '88, '89, '90 and '91 and 26 weeks in 1992. The statement also included 14 weeks of service at $50.00 per week in 1995 and "bills paid for Fred also come to a total of $118.67." The total amount of Appellants' claim was $19,018.67.

The Executor of the Filyaw estate filed exceptions to the Appellants' claims, and a hearing was held in Probate Court on October 6, 1998. The Appellants provided the testimony of a number of witnesses to support their claims. As pertinent to this appeal, two neighbors and Barbara Pritchett's sister testified that they saw Mr. Filyaw come to the Appellants' home to eat the evening meal with them almost daily "from the mid-eighties to the early nineties." A nurse and a sitter who cared for Mr. Filyaw during the last few months of his life testified that they observed the Appellants bringing groceries and preparing food for him. The sitter testified that "when he was in his right mind, he [Mr. Filyaw] told Barbara that he would pay her . . . for groceries . . . medication . . . and what he owed her for way back cooking and coming and cleaning up." Mrs. Pritchett's sister and another witness, Beulah Hutsell, also testified that they heard Mr. Filyaw promise to pay Barbara for groceries.

Barbara Pritchett testified that she expected to receive payment for the groceries and for cooking his food, but Mr. Filyaw never paid her. She thought she spent about $50.00 a week for the special foods and to prepare them. Her husband testified that in 1995 he graded Mr. Filyaw's road with a tractor and drove a nurse to and from Mr. Filyaw's home daily, for which he claimed $372.60 for grading and mileage.

The Probate Court found that the Appellants had failed to prove they had any expectation of being paid during Mr. Filyaw's lifetime for meals provided to him prior to 1995, but that they should be reimbursed for certain expenses actually paid, including $455.06 for their itemized first claim, $700 for 14 weeks of meals prepared in 1995, and $372.66 for grading the driveway in 1995. The Probate Court found that there was no agreement between the Appellants and Mr. Filyaw to pay them during his lifetime, but rather only an expectation by Appellants to be beneficiaries of Mr. Filyaw's estate.

## DISCUSSION

Appellants state the issue on appeal as whether the Chancellor erred in denying them reimbursement for decedent's meals from 1985 through 1992, which were not intended as a gift, and for which decedent knew reimbursement was expected. Appellee states the issues as (1) whether the Trial

Court properly disallowed testimony about statements Mr. Filyaw may have made about reimbursing Appellants for his meals, and (2) whether the appeal is frivolous.

Our review is de novo upon the record, accompanied by a presumption of the correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Rule 13(d), T R A P.; *Lindsey v. Lindsey,* 976 S.W.2d 175, 178 (Tenn. App. 1997).

Appellants concede on appeal that their testimony about statements Mr. Filyaw made to them is barred under T.C.A. § 24-1-203, Dead Man's Statute. The Probate Court apparently did not consider that testimony. Appellants insist that their testimony about the cost of groceries and the testimony of third parties about Mr. Filyaw's intentions was admissible, since the Dead Man's Statute bars testimony, not claims. The Probate Court allowed the testimony of Appellants' witnesses about Mr. Filyaw's habit of eating with his niece and nephew as well as the testimony of what these witnesses heard Mr. Filyaw say. However, the Trial Court found that testimony unconvincing on the issue of whether the Appellants expected to be paid by Mr. Filyaw during his lifetime for those meals. Given our ruling, it is unnecessary to address any further Appellee's argument concerning the admissibly of Mr. Filyaw's statements.

Because the trial judge is in a better position to weigh and evaluate the credibility of witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *In re Estate of Walton v. Young,* 950 S.W.2d 956, 59 (Tenn. 1997). Findings that are related to the issue of credibility will not be disturbed by this Court, absent other concrete evidence to the contrary which shows that the trial judge erred in his judgment of the veracity of the witnesses. *Farmers & Merchants Bank v. Dyersburg Prod. Credit Ass'n.,* 728 S.W.2d 10, 18 (Tenn. App. 1986). The trial judge in this case found that, despite the testimony of the Appellants' neighbors and family, they had failed to prove that they expected reimbursement, during Mr. Filyaw's lifetime, for meals provided over the eight year period. We find the evidence does not preponderate against the Probate Court's findings of fact on this issue.

Appellants contend that this case is controlled by the holding of this Court in *Estate of*

*Cleveland v. Gorden,* 837 S.W.2d 68 (Tenn. App. 1992). In that case, Ms. Frances Cleveland of Nashville became seriously ill in January 1984. A neighbor telephoned her niece, Ms. Jane Gorden, in Houston, who immediately traveled to Nashville because Ms. Cleveland, then 92-years-old, had no one else to care for her. Ms. Gorden cared for her aunt for three weeks at her home in Nashville, then placed her in a nursing home in Shelbyville when it became certain that Ms. Cleveland required skilled nursing care. Ms. Gorden discussed her aunt's finances with officers at the Third National Bank in Nashville where Ms. Cleveland maintained her accounts. The bank officers assured Ms. Gorden that she would be able to obtain full reimbursement for any expenditures she made on her aunt's behalf if she opened a separate account for that purpose and maintained detailed expense records. Ms. Gorden followed the recommendations of the bank officials.

Ms. Cleveland recovered somewhat in the nursing home, and remained there from 1984 until her death in 1989. During all of that time, Ms. Gordon paid her expenses, including the nursing home bills, medical expenses, utilities for her Nashville house, and occasional small personal sundries. There was testimony that Ms. Cleveland was aware that Ms. Gorden was using her own money to pay the nursing home bills and that Ms. Cleveland told a companion that Ms. Gorden "would get everything she had, if there was anything left." Ms. Cleveland's personal income from social security, rental of her house, and income from a trust fund, continued to be deposited in her own account. When Ms. Cleveland died, her 1976 will was probated, and Ms. Gorden received a portion of Ms. Cleveland's antique furniture. Ms. Cleveland left her house, several items of furniture and a 1932 Ford automobile to her church, which was also named as the residuary beneficiary of her estate. Ms. Gordon filed a claim against the estate seeking reimbursement for the $99,741 of her own funds that she had spent on Ms. Cleveland during her six years in the nursing home.

The Probate Court of Davidson County denied Ms. Gorden's claim because Ms. Cleveland had never specifically agreed to reimburse her for expenditures. This Court reversed, finding that Ms. Cleveland knew that Ms. Gorden expected to be reimbursed for the expenditures she was making on her behalf. The Court acknowledged the common law presumption that family members'

services are gratuitous, but explained that the presumption is not conclusive. This presumption can be rebutted by proof of an express agreement to pay for the services or by proof of circumstances showing that the relative accepting the benefit of the services *knew or should have known* that the relative performing them expected compensation or reimbursement. *Cleveland* at 71. The Court found that even though there was no express agreement for Ms. Cleveland to reimburse Ms. Gorden for her expenditures, Ms. Cleveland knew that Ms. Gorden was supporting her and accepted the support. The facts in *Cleveland* showed a clear expectation all along by Ms. Gorden to be reimbursed. No such expectation is shown in the record now before us.

In the case now before us, the Probate Court was presented with the *Estate of Cleveland* case and discussed its application to the facts of this case at length from the bench. The Probate Court found:

> Now I have no doubt that when George and Barbara Pritchett were taking care of Fred Filyaw from 1985 through 1992, they were doing so out of love and affection for Fred Filyaw without any expectations of him writing them a check for those services. Because if they had . . .why didn't [they] collect the money from him for services rendered in 1985 or '86 or '87 or '88, all those years way back then? And I think the only inference the Court can draw is that you didn't expect him to pay you out of his pocket for those services. I think you did expect to benefit from those services . . . in his will.
>
> \* \* \*
>
> So the Court finds that there was no showing that for any of the services rendered to Mr. Filyaw prior to his conservatorship being filed [in 1993], that there was any expectation to be paid by Mr. Filyaw during his lifetime. The expectation was to be a beneficiary of his estate, unlike this case in the *Estate of Cleveland* where there was a clear expectation to be reimbursed, a detailed accounting was kept and a fairly short term relationship by not a very close family member.

The facts as presented to this Court in the record support the findings of the Probate Court. The common law presumption that family members' services are provided gratuitously to a loved one, while not conclusive, has not been rebutted here. The proof supports the Probate Court's determination that there was no express agreement by Mr. Filyaw to pay for the services provided by the Appellants, or that Mr. Filyaw knew or should have known that the Appellants expected

compensation or reimbursement. Particularly telling was the testimony of one of the Appellants' witnesses that Mr. Filyaw was very tight with his money and was more than willing to take benefits from any family member he could with no intention of paying that family member for those benefits. From the facts before us, this appears to be exactly what happened in this case.

Additionally, while Appellants' claims went back only for eight years due the statute of limitations, Mr. Pritchett testified that he had expected to be reimbursed or paid for services he provided for Mr. Filyaw as far back as 1948 or 1949. Despite this "expectation" by the Appellants, they never took any steps to recover any money they claimed they were owed by Mr. Filyaw, even when they had their falling out with Mr. Filyaw after the conservatorship was filed. The Probate Court found that Appellants had provided the benefits to Mr. Filyaw from 1985 through 1992 "out of love and affection for Fred Filyaw without any expectations of him writing them a check for those services." The facts do not preponderate against the Probate Court's finding that Appellants did not expect Mr. Filyaw to pay them for those services during his lifetime, but instead expected to be beneficiaries of his estate. The preponderance of the evidence is in favor of the Probate Court's findings. We affirm the decision of the Probate Court.

Appellee asks this Court to award damages for frivolous appeal. T.C.A. § 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

[Acts 1975]

A frivolous appeal is one devoid of merit, or one where there is little prospect that an appeal can ever succeed. *Industrial Development Board of the City of Tullahoma v. Hancock,* 901 S.W.2d 382 (Tenn. 1995). A factual or legal dispute will preclude an award of damages for a frivolous appeal. *Anderson v. Dean Truck Line, Inc.,* 682 S.W.2d 900, 902 (Tenn. 1984). We find that this

claim encompassed legitimate disputed issues of fact and law. We decline to award damages for frivolous appeal.

## CONCLUSION

The judgment of the Probate Court is affirmed and this cause is remanded to the Probate Court for such further proceedings, if any, as may be required consistent with this Opinion, and for the collection of the costs below. Costs on appeal are adjudged against the Appellants.

_____
D. MICHAEL SWINEY, J.

CONCUR:

_____
HOUSTON M. GODDARD, P.J.

_____
HERSCHEL P. FRANKS, J.