IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 29, 2012 Session

## PATRICIA DEMAREST v. ESTATE OF RONALD JOSEPH KROLL

Appeal from the Probate Court for Wilson County
No. 10-P281, 09-P268     John Thomas Gwin, Judge

No. M2011-02385-COA-R3-CV - Filed September 7, 2012

Alleged creditor filed a claim against the decedent's estate seeking $524,160 for personal services she claims to have provided to the decedent during the last ten months of his life. She claims the decedent agreed that she would reside in his home and provide the decedent with around the clock care. Upon motion for summary judgment filed by the administrator of the estate, the probate court denied the claim, finding there was no contract or quasi-contract between the alleged creditor and the decedent because the decedent was mentally incapable of entering into a contract, and that the family service rule barred the alleged creditor from recovering because the alleged creditor and the decedent were engaged to be married at the time of the decedent's death. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Patricia T. Demarest, Mt. Juliet, Tennessee, Pro Se.

A. Ensley Hagan, Jr., Lebanon, Tennessee, for the appellee, Estate of Ronald Joseph Kroll, and Administrator, Jennifer M. Porth.

### OPINION

The decedent, Ronald J. Kroll, an elderly widower, had lived alone in his home in Mt. Juliet, Tennessee since his wife died in 1999. The claimant, Patricia T. Demarest, was a renter residing in a house next door to Mr. Kroll. In August of 2009, when Ms. Demarest's lease was terminated for failing to pay rent, she moved all of her belongings into the home of Mr. Kroll. At the time, Ms. Demarest was 48 years of age; Mr. Kroll was 72 years old in declining physical and mental health.

Mr. Kroll's neighbors became concerned for Mr. Kroll when they learned that Ms. Demarest had moved in with him. Believing there was nothing they could do, the neighbors contacted his step-daughter, Charlene Mae Schweinfurth, who was also Mr. Kroll's attorney-in-fact. Ms. Schweinfurth was living in Portland, Oregon at the time, but after speaking with the neighbors Ms. Schweinfurth also became concerned for Mr. Kroll's welfare and traveled to Tennessee to check on him. After assessing the situation, Ms. Schweinfurth attempted to remove Ms. Demarest from Mr. Kroll's home but was unsuccessful. The primary reason Ms. Schweinfurth was unsuccessful in removing Ms. Demarest was that Mr. Kroll and Ms. Demarest stated they were in a romantic relationship and intended to marry.

On September 5, 2009, approximately two weeks after Ms. Demarest moved in, Mr. Kroll passed out in his home. He was immediately taken to the hospital where doctors determined that he was suffering from malnutrition, dehydration, and pneumonia. He remained in the hospital until September 17, 2009, when he was transferred to a skilled nursing facility. Upon admittance, Mr. Kroll was examined by Dr. Luiz Fernandez, who determined that Mr. Kroll still suffered from pneumonia, and furthermore suffered from impaired cognition and had poor insight into his medical conditions. Dr. Fernandez recommended that a conservator be appointed. On October 6, 2009, Dr. Edward Qualls conducted a clinical psychological interview with Mr. Kroll, and confirmed that Mr. Kroll suffered from mild to moderate cognitive impairment and was at risk for future development of dementia. Dr. Qualls also recommended that Mr. Kroll be placed under a conservatorship.

Based upon her observations of Mr. Kroll and the doctors' recommendations, Ms. Schweinfurth filed a Petition for Appointment of Conservator for Mr. Kroll on October 8, 2009. Michael Ferrell was appointed to serve as the guardian ad litem. When the court was informed that Mr. Kroll contested the petition, the court appointed Jennifer Porth to serve as Mr. Kroll's attorney ad litem.

Pursuant to recommendations from the guardian ad litem and Mr. Kroll's doctors, the court issued a Restraining Order prohibiting Mr. Kroll from marrying, executing a will or trust, or otherwise conveying any property in excess of $500.[1] Thereafter, an Agreed Order was entered granting Ms. Porth authority to receive Mr. Kroll's mail, pay his reasonable living expenses, prepare checks for his signature, and generally handle and monitor his finances.

In early 2010, Mr. Kroll and Ms. Demarest approached Ms. Porth about the possibility of compensating Ms. Demarest. As an accommodation, Ms. Porth agreed to pay Ms.

---

[1]The Restraining Order notwithstanding, Mr. Kroll named Ms. Demarest the beneficiary of an annuity in the amount of $30,000, which funds she received upon his death.

Demarest $500 per month, beginning April 2010, pending court approval of the arrangement. Ms. Porth wrote two checks payable to Ms. Demarest, each for $500, for April and May 2010. Ms. Porth presented the checks to Mr. Kroll for his signature but he refused to sign them.

Mr. Kroll died on July 11, 2010, prior to the court ruling on the Petition for Appointment of Conservator. His surviving family consisted of his sister, who was in ill health and passed away six months after his death, and his step-daughter, Ms. Schweinfurth, the daughter of his deceased wife.

Jennifer Porth filed a Petition for Appointment of Administrator on January 26, 2011.[2] Ms. Porth (hereafter, "the Administrator"), was appointed administrator of the estate.

On February 24, 2011, Ms. Demarest, who continued to reside in Mr. Kroll's home, filed a pro se creditor's claim of $524,160 against Mr. Kroll's estate in the Wilson County Probate Court. She stated in the claim that Mr. Kroll hired her on August 25, 2009, the date she moved in to his home, to serve as a "live-in caregiver" and housekeeper in exchange for room and board, but that she was "quickly promoted" to an "around the clock Advocate and Private Contractor." She sought to recover payment for 168 hours of work per week for 78 weeks (13,104 total hours) at a rate of $40 per hour for, *inter alia*, "undressing, bathing, shaving, . . . in-home physical therapy exercises, (daily) overseeing medication intake, . . . cooking, cleaning, . . ."[3]

The Administrator timely filed an Exception to Ms. Demarest's claim on April 18, 2011, asserting the claim was invalid for several reasons. Ms. Demarest then filed an Answer and Amendment to her claim. On September 19, 2011, the Administrator filed a motion for summary judgment, arguing, *inter alia*, that the undisputed facts established Mr. Kroll did not have the mental capacity to enter into a contract or quasi-contract with Ms. Demarest, and that the claim was barred by the Family Service Rule and the Dead Man's Statute, Tennessee Code Annotated § 24-1-203.

In response to the motion for summary judgment and statement of undisputed facts submitted by the Administrator, Ms. Demarest mailed to the probate court a press release

[2]At the time, Ms. Porth did not know that Mr. Kroll had left a Last Will and Testament which nominated his step-daughter as the administrator of his estate and which directed that she receive his entire estate. Ms. Schweinfurth declined to serve as the administrator.

[3]At the time of his death, Mr. Kroll's estate was worth $302,998.71. Prior ot his death, he had received $1,745/month from Social Security and a pension.

from *The Tennessean*, a copy of a 2002 Massachusetts lawsuit in which Ms. Demarest was involved, and a letter concerning a Wilson County Sheriff; however, she did not file a proper response or statement of disputed facts as required by Rule 56.03 of the Tennessee Rules of Civil Procedure.

Ms. Demarest participated in the hearing on the motion for summary judgment, which occurred on October 20, 2011. After hearing from the parties, the probate court granted the Administrator's motion, due to Ms. Demarest's failure to provide a proper response and on the merits of the motion. The order was entered on October 24, 2011, after which Ms. Demarest filed a timely notice of appeal.[4]

## ANALYSIS

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

When reviewing the evidence, in this case affidavits, the appellate court first determines whether factual disputes exist. *Byrd*, 847 S.W.2d at 214. If a factual dispute exists, the court then determines whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a

---

[4]Two issues arose in the probate court after Ms. Demarest filed this appeal. First, the probate court initially approved a Uniform Civil Affidavit of Indigency for Ms. Demarest. However, on motion by the Administrator, the court revoked Ms. Demarest's indigency status and required her to pay a $2,500 appeal bond due to the fact that Ms. Demarest failed to include in her affidavit of indigency that she had received $30,000 from Mr. Kroll upon his death. By order dated December 20, 2011, this Court reduced the bond to $1,000. Second, while the appeal has been pending, Ms. Demarest filed several motions in the probate court which sought to have additional documents included in the record on appeal, including Mr. Kroll's medical records and "any and all demeaning and/or threatening written correspondences made by and between the Honorable Judge John T. Gwin to the Judges of the Court of Appeals." The Administrator filed an objection to Ms. Demarest's Statement of Record on January 10, 2012; the following day, the probate court approved the Administrator's Statement of the Evidence and listed the documents to be included in the certified record, of which this Court also approves.

genuine issue for trial. *Id.* at 214.

A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215.

In this case, the Administrator of Mr. Kroll's estate filed a motion for summary judgment asserting that there are no genuine issues of material fact relating to the creditor's claim and that Mr. Kroll's estate is entitled to judgment as a matter of law. The Statement of Undisputed Facts served therewith sets forth forty-three separate facts, each of which is properly supported by proof in the record and which provide the factual basis for summary judgment in favor of Mr. Kroll's estate, unless Ms. Demarest filed the proper response to put the material facts in issue. She did not. Instead, Ms. Demarest filed papers with the probate court that had no bearing on the Statement of Undisputed Facts submitted by the Administrator on behalf of Mr. Kroll's estate; thus, she did not put at issue any of the material facts upon which the Administrator relied. Accordingly, the facts submitted by the Administrator are undisputed, including that Mr. Kroll was not competent to enter into an enforceable contract with Ms. Demarest.

Furthermore, the undisputed facts establish that Ms. Demarest is not entitled to compensation under the family service rule. As this Court held in *In re Conservatorship of Groves*, 109 S.W.3d 317 (Tenn. Ct. App. 2003), "[f]amily members are generally precluded from recovering for services provided to their close relative because the law presumes that these services were gratuitous." *Id.* at 356 (citing *Gorrell v. Taylor*, 64 S.W. 888, 888 (Tenn. 1901); *Estate of Cleveland v. Gorden*, 837 S.W.2d 68, 71 (Tenn. Ct. App. 1992)). The court in *Groves* further explained:

> This presumption is based on the recognition that family life abounds in acts of reciprocal kindness which tend to promote the comfort and convenience of the family, and that the introduction of commercial considerations into the relations of persons so closely bound together would expel this spirit of mutual beneficence and to that extent mar the family unity.

*Id*. (citing *Key v. Harris*, 92 S.W. 235, 237 (Tenn. 1905)).

Although Ms. Demarest was not related to Mr. Kroll, the family service rule applies because "persons in contemplation of marriage who are acting like family members are

family members. Therefore, the personal services that these persons render to each other are presumed to be gratuitous." *In re Estate of Marks,* 187 S.W.3d 21, 30-31 (Tenn. Ct. App. 2005). It is undisputed that Ms. Demarest and Mr. Kroll stated they were in love and intended to marry; thus the family service rule applies.

The presumption is rebuttable "so family members may obtain compensation for their services *if* they prove either that their relative agreed to pay for the services or that the services were provided under circumstances reflecting that the relative receiving the services knew that the relative providing them expected to be paid." *Id.* (emphasis added). As noted above, the undisputed facts show that Mr. Kroll was not mentally capable of making such an agreement and Ms. Demarest failed to produce evidence establishing otherwise.

Having reviewed the undisputed facts, we have determined, as the probate court did, that the Administrator acting on behalf of the estate of Mr. Kroll, is entitled to judgment as a matter of law. Accordingly, we affirm the grant of summary judgment to the Administrator of the Estate of Mr. Kroll and the denial of Ms. Demarest's claim.

## IN CONCLUSION

The judgment of the probate court is affirmed and this matter is remanded with costs of appeal assessed against the appellant, Patricia T. Demarest.

_____
FRANK G. CLEMENT, JR., JUDGE