## IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

July 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

ALLSTATE INSURANCE COMPANY, )
)
       Plaintiff/Appellant,     ) **Knox Circuit No. 2-493-94**
)
VS.                     ) **Appeal No. 03A01-9710-CV-00466**
)
W. ZANE DANIEL,        )
)
       Defendant/Appellee.   **)**

APPEAL FROM THE CIRCUIT COURT OF KNOX COUNTY
AT KNOXVILLE, TENNESSEE
THE HONORABLE HAROLD WIMBERLY, JR., JUDGE

**W. ANDREW FOX**
Knoxville, Tennessee
Attorney for Appellant


**W. ZANE DANIEL**
**DANIEL & OBERMAN**
Knoxville, Tennessee
Attorney for Appellee

**AFFIRMED**

                             **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

      Plaintiff/appellant, Allstate Insurance Company ("appellant"), appeals the judgment

of the trial court awarding defendant/appellee, W. Zane Daniel ("appellee"), one-third of appellant's subrogation funds. For reasons stated hereinafter, we affirm the trial court's judgment.

In April of 1991, appellee was retained to represent Lisa Robinson ("plaintiff") in her automobile accident litigation. The accident occurred on April 14, 1991. Appellee was retained on the basis of a contingency fee of one-third of the total recovery. Eventually, appellee represented plaintiff in an action concerning this accident styled *Robinson v. Heagey, et al.*, Knox County Circuit Court Docket No. 2-253-92. Appellant had an insurance policy with John H. and Winona Robinson which provided coverage, including coverage for medical payments for plaintiff.

Pursuant to this contractual agreement, appellee gave formal written notice of his representation of plaintiff to all interested parties including, but not limited to, the appellant. The letter forwarded to appellant was dated April 23, 1991.

A little over four months later in correspondence dated September 9, 1991, appellant notified appellee of the possibility of a subrogation interest by stating:

> As a claimant carrier, State Farm, has limits of liability greater than or equal to ours, we will be closing all coverages under this policy other than medical payments.
>
> Once treatment is completed or our limits are exhausted, we will be subrogating from the claimant carrier for our expenditure under the medical payments coverage.

Suit was filed in the Knox County Circuit Court on April 10, 1992. (Id.). Soon thereafter, appellant intervened in the suit. Appellant was represented in this intervention by Ron Cunningham, attorney.

On May 26, 1992, appellee forwarded a letter to Cunningham which stated:

> Enclosed you will find the Order wherein you have intervened on behalf of Allstate Insurance Company in the above-styled action.
>
> I will expect you to be present at all depositions, and your

2

company pay for the necessary costs in proving the medical bills and expenses to establish your claim.

Likewise, any and all costs should be split equally between your company and my client, which is necessary in order to pursue this matter for trial. I assume there will be no questions pertaining to this but if there are, please notify me immediately and I will ask the Court for an Order directing that your client share in the expenses in pursuing this matter.

Please notify me if there are any questions or otherwise I will assume that any and all depositions, et cetera, will be shared equally between our clients.

On July 29, 1992, attorneys for appellant wrote appellee stating that they would relay this information to appellant. They further stated that there was an anticipation that defendants in the initial matter would stipulate as to medical bills and that a more definite reply would follow.

Thereafter, on October 7 of that same year, attorneys representing appellant responded that appellant would not assume costs and, once again, that appellant anticipated defendants stipulating to the amount of medical bills.

No further contact was made by appellant with appellee until the day of trial.

On December 11, 1992, pretrial depositions were taken of all parties concerned. This involved four different individuals. Appellant was cognizant of these depositions but failed to appear to represent their interest.

One month later, the deposition of Dr. John Soldano was taken, and, once again, appellant failed to have its attorney present to represent its interest. Thereafter, on January 25, 1993, Dr. James David Johnson's deposition was taken. Again, no one appeared on appellant's behalf.

All costs of taking the above depositions and proving the medical bills and expenses which are the subject of this subrogation claim were borne by the original plaintiff and appellee, her counsel, with appellant refusing to take part.

On February 3, 1993, the matter was set for trial and an attorney for appellant appeared at the courthouse at approximately 8:45 a.m. Appellee then advised appellant's attorney that he felt that appellant's attorney should not participate in the trial inasmuch as he had virtually no knowledge of the case. Prior to this time, no representative of appellant was ever requested not to participate in the investigation and preparation of this matter for trial.

Contrary to appellant's anticipation, defendants in *Robinson v. Heagey, et al* did not stipulate to plaintiff Robinson's medical bills. Consequently, medical proof through the doctors was required in order to prove Robinson's injuries and that the medical bills were related to the automobile accident.

Appellee investigated the case, prepared interrogatories and requests for admission to the defendant, and answered the interrogatories of the defendant. In short, appellee fully prepared the case for deposition and trial.

Appellant performed no work on the case at any time. In fact, the only appearance made by appellant's counsel was on the morning of the trial wherein counsel appeared for approximately one hour before the case commenced.

At the conclusion of the trial, judgment was entered for plaintiff in the amount of $4,153.56, and appellant contacted appellee and informed him that they would be requesting the $4,153.56 allegedly due under their subrogation rights. The appellee then withheld monies allegedly payable to appellant under its subrogation interest upon the basis that he was entitled to reasonable attorney's fees and costs for his services in securing payment of appellant's subrogation claim.

Upon the conclusion of the case, appellee tendered two-thirds of the above sum to appellant for its subrogation interest and retained one-third for himself. Appellant filed this action and stated that they would not pay attorney's fees for the work performed and asked

4

that plaintiff pay the full subrogation amount of $4,153.56.

This cause was heard before the Judge Wimberly in chambers, and he reviewed the statements of the parties and the different documents. Judge Wimberly was the same judge who heard the case of *Robinson v. Heagey, et al.* In view of the fact that appellant had not performed any work or services, or advanced any expense in order to collect their subrogation claim, the court decided that appellee was entitled to one-third attorney's fees for the work performed in collecting this money. Case expense was not an issue raised at trial. Therefore, the trial court did not consider the issue. This appeal ensued.

The issue presented by this case was considered by the Tennessee Supreme Court in *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587 (Tenn.1976), and by this Court in *Tennessee Farmers Mut. Ins. Co. v. Pritchett*, 54 Tenn.App. 410, 391 S.W.2d 671 (1964), and *Motors Ins. Corp. v. Blakemore*, 584 S.W.2d 204 (Tenn.App.1978). In *Pritchett*, this Court held that the insurer was obligated to pay its insured's attorney a fee for collecting a subrogation claim. Specifically, the Court found an implied contract to pay a reasonable attorney's fee for recovery of the subrogation claim where the insurer acquiesced in the action of the insured's attorney on its behalf. In *Williams* and *Blakemore*, the Supreme Court and this Court found that because the insurer notified the insured's attorney prior to the performance of beneficial services that it would handle its own subrogation claim the attorney was not entitled to a fee.

The applicable legal principle is recognized in all of the above cases. It is stated in *Williams*, as follows:

> There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others. But, an exception to this rule is made whenever one person, having assumed the risks and expense of litigation, has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common. In that event, the expenses of the action are borne by each participant according to his interest. The fairest and most efficient means of distributing these costs is thought to be to

make them a charge upon the fund itself. This device, known as the 'fund doctrine,' was invented by courts of equity to prevent passive beneficiaries of the fund from being unjustly enriched. It is, therefore, never applied against persons who have employed counsel on their own account to represent their interests. Thus, the right to employ counsel of one's own choosing is preserved. . .

[v]aried fact situations are disclosed by the reported cases dealing with this problem. We doubt the advisability of attempting to devise a single 'rule' to govern all such cases, whatever the facts might be. Instead, each case, with its peculiar facts must be decided by applying general, fundamental principles of contract law. . .

[i]t follows that whether or not an attorney is entitled to collect from the insurer a fee with respect to a subrogation claim depends upon whether an express or implied contract or a quasi contractual relation exists between them.

*Travelers Ins. Co. v. Williams*, 541 S.W.2d at 589-90 (citations omitted).

Implied contracts do that which the law says ought to be done as a matter of right and justice. They are such as reason and justice dictate, and which, therefore, the law presumes that every man undertakes to perform. Generally an implied contract is one which is inferred from the conduct of the parties; it is not necessarily expressed in words. 7 Tenn.Juris., Contracts, § 98. "A contract implied in law is imposed by operation of law, without regard to the assent of the parties, on grounds of reason and justice." *Continental Motel Brokers, Inc. v. Blankenship*, 739 F.2d 226, 232 (6th Cir.1984) (citations omitted). Courts are directed to look to the conduct of the parties in light of all the circumstances to determine whether an implied contract exists. One Tennessee court has explained as follows:

In Tennessee, any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for the requested act, amounts to an offer, and that such a request might be implied when the facts and circumstances are such that the person receiving the benefit of such work or services know, or reasonably should have known, that the person doing the work expected to be compensated.

*Cummins v. Brodie*, 667 S.W.2d 759, 764 (Tenn.App.1983) (quoting *In re Estate of Holding*, 61 Tenn.App. 654, 663-64, 457 S.W.2d 545, 549 (1969)).

6

As noted *supra*, the principle recognized in *Williams*, *Pritchett*, and *Blakemore* is this: after notice to the insurer by the insured's attorney of his/her representation, the attorney will be entitled to be compensated for services rendered the insurer until such time as the attorney is notified by the insurer that it will be responsible for asserting its claim for subrogation. *See Boston, Bates, and Holt v. Tennessee Farmers Mutual Insurance Company*, 857 S.W.2d 32 (Tenn. 1993).

The conduct of the parties indicates that an implied contract did exist, that appellee was obligated to provide his services as an attorney, and that appellant was obligated to pay for such services.

In the present case, appellee advised appellant of his representation of plaintiff. Thereafter, appellant's response was, at best, equivocal: "Once treatment is completed or our limits are exhausted, we will be subrogating from the claimant carrier for our expenditure under the medical payments coverage." Although, no doubt, appellant planned to pursue its subrogation interest, there is no indication from appellant as to how appellant planned to go about securing payment of such interest. After appellant intervened in this matter, appellee asked appellant to be present at all depositions and to share in the costs of proving medical bills and expenses had by plaintiff. After medical bills were not stipulated to by defendants, appellee set up depositions to prove medical bills and expenses incurred by plaintiff Robinson. Appellant failed to attend any of the depositions or to supply appellee with funds to aid in proving the medical bills and expenses. In fact, appellant failed even minimally to involve itself in this matter until the morning of the trial. Under these circumstances, it is the opinion of this court that a reasonable person in appellee's position would be justified in assuming that appellant wanted appellee to secure payment of their subrogation interest. Appellee, undoubtedly, could not safely abandon any portion of his client's cause of action.

Appellant cites this court to the *Williams* case mentioned above. This present case, however, is distinguishable from *Williams* in that the insurer in *Williams* unequivocally

7

stated that it would "handle its own subrogation." As mentioned *supra*, appellant merely stated somewhat equivocally that it would subrogate from the claimant's carrier. However, appellant failed to apprise appellee of who would handle its subrogation interest. This fact coupled with the fact that appellant failed even remotely to participate in any aspect of this matter is strong evidence that appellant knew or should have known that appellee expected to be compensated for his services.

Based on the evidence in the record and in light of the foregoing, we think the trial court properly found an implied contractual relationship between appellee and appellant thereby awarding attorney's fees to appellee. Accordingly, the judgment of the trial court is affirmed. Costs are taxed against appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

8