IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2001Session

**IN RE:  ESTATE OF SAM VIRES, DECEASED**

**SHIRLEY SCHULZE, a/k/a SHIRLEY SCHULZE VIRES v. JERE STEVEN VIRES, RANDALL K. VIRES, JOSEPH S. VIRES, and MARILYN VIRES**

**An Appeal from the Probate Court for Shelby County**
**No. B-29543     Robert S. Benham, Judge**

_____

**No. W2000-02953-COA-R3-CV - Filed April 10, 2002**

_____

This is an action to recover compensation from an estate for personal services rendered to the decedent.  The plaintiff and the decedent were romantically involved and lived together for several years.  However, they were never legally married.  The decedent died testate, but the plaintiff was not included as a beneficiary in the decedent's will.  After the will was probated, the plaintiff filed a claim against the estate for all services rendered as caregiver to the decedent.  The trial court disallowed the plaintiff's claim because her services to the decedent were rendered gratuitously, and because there was no express or implied agreement between the plaintiff and the decedent to pay for such services.  The plaintiff now appeals that order.  We affirm, finding no evidence of an agreement between the plaintiff and the decedent to pay the plaintiff for her caregiving services.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court is Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

R. Layne Holley, Murfreesboro, Tennessee, William H. Frye, Jackson, Tennessee, and Tommy L. Fullen, Bartlett, Tennessee, of McNabb, Holley, Waldrop, & Bragorgos, PLLC, for the appellant, Shirley Schulze, a/k/a Shirley Schulze Vires.

Alan R. Wolfe and Martin R. Conway of Williams, McDaniel, Wolfe & Womack, Memphis, Tennessee, for the appellees, Jere Steven Vires, Randall K. Vires, Joseph S. Vires, and Marilyn Vires.

**OPINION**

This is an action to recover compensation from an estate for personal services rendered to the decedent. The decedent, Sam Vires ("Sam"), owned Mid-South Aircraft Sales. In the summer of 1968, he hired plaintiff Shirley Schulze, a/k/a Shirley Schulze Vires ("Shirley"), as his secretary. Sam and Shirley became romantically involved in December 1968 while Sam was still married to Marilyn Vires ("Marilyn"). Sam divorced Marilyn in 1976, and continued his involvement with Shirley until his death in 1997. Over the course of their relationship, Shirley and Sam lived together for six months in 1982, for some time in 1986 or 1987, and then from 1990 until Sam's death.

In August 1993, after attending a social event at the yacht club to which Sam and Shirley belonged, Sam and Shirley had an impromptu wedding ceremony performed by fellow yacht-club member Judge A. V. McDowell, a Shelby County Juvenile Court Referee. Some time subsequent to the ceremony, Sam bought Shirley a diamond band commonly known as an "anniversary ring." Shirley considered herself to be married to Sam, and they conducted themselves as husband and wife. At no time, however, did the couple apply for or obtain a marriage license.

In 1990, Shirley and Sam broke off their relationship for about two months. During that time, Sam attempted to reconcile with Shirley, soliciting help from their friends to persuade Shirley to reconcile with him. Ultimately, the couple reconciled and Shirley sold her home and many of her possessions and moved in with Sam. She later testified that she moved in with the understanding that they would live together forever and that they would take care of each other until they died. Shirley claimed, "[T]o me I was his wife, and I did everything that a wife would do and – that included everything, washing dishes." During their cohabitation, Sam bought Shirley a car and paid for most of their living expenses.

In February 1996, Sam became ill. From that time until his death on June 4, 1997, Shirley participated in Sam's health care, and her participation increased as his condition worsened. Though she had the aid of sitters on occasion, who were paid between $7 and $10 per hour, Shirley performed most of the caregiving tasks. She transported Sam to and from the hospital, prepared his meals, regulated his medicines, ensured that he took his insulin (he was diabetic), and helped him groom and dress himself. As Sam became increasingly incapacitated from his illness, Shirley took care of his basic hygiene needs, such as brushing his teeth, using a urinal, and cleaning him after he used the bedpan. Shirley testified that she took care of Sam because, among other reasons, he wanted her help and she loved him.

Sam died on June 4, 1997, and his Last Will and Testament was probated on June 10, 1997. Despite his relationship with Shirley, Sam did not include her as a beneficiary in his will. Rather, Sam devised his estate to his three sons born during his marriage to Marilyn, Jere Vires, Randall Vires, and Joseph Vires, and he appointed his sons to be co-executors of his estate. On July 18, 1984, Sam executed a codicil to his will to include his former wife, Marilyn, to share equally in his estate as a one-fourth beneficiary with their sons.

On October 16, 1997, Shirley filed a petition to recover an elective share and year's support as Sam's surviving spouse, and on November 18, 1997, she filed an amended petition. Because the couple never obtained a marriage license, the trial court entered an order finding that Sam and Shirley were not legally married, and that order is not at issue in this appeal.

On November 25, 1997, Shirley filed a claim against the estate "[f]or all services rendered as caregiver to the decedent and for other such business and personal services rendered to the decedent." She sought an amount that "should not exceed the amount to which [she] is entitled as the surviving spouse, including but not limited to, her Elected Share and Year's Support, in the approximate amount of $600,000."

On September 13, 2000, the case was tried by the trial court sitting without a jury. At the conclusion of the hearing, the trial court determined that, with respect to the relationship between Shirley and Sam, "there was no express or implied request for services with the expectation of payment, but rather [Shirley] was expecting to inherit from [Sam]." Shirley's claim was denied because (a) there is no recovery for the expectation of an inheritance, and (b) the closeness of her relationship with Sam created a presumption that her services were gratuitous and performed without expectation of payment. From this order, Shirley now appeals.

Shirley argues that the trial court erred in determining that there was no contract for services between Sam and her. She claims also that the trial court erred in determining that the closeness of her relationship with Sam created a presumption that her services were gratuitous. To support her claim, she cites to the testimony of several witnesses who testified that Sam relied on Shirley and that he often expressed his intent to "take care of" her. Because this case was tried without a jury, we review the trial court's decision *de novo* upon the record with a presumption of correctness of the court's findings of fact. **Tenn. R. App. P.** 13(d); *Pritchett v. Lunsford (In re: Filyaw)*, 1999 Tenn. App. LEXIS 706, at *5 (Tenn. Ct. App. Oct. 18, 1999).

The law in Tennessee is well settled on the standard for a claim against an estate for services rendered to the decedent:

> In asserting a claim against an estate for services rendered the decedent, the cause of action necessarily is based upon either contract or quasi contract. . . . To bring a contact into existence there must be an offer and an acceptance of that offer. The offer and acceptance may be expressed or implied from the parties' conduct. . . .
>
> In order to make out an implied contract for the rendition of services, facts and circumstances must be shown which amount to a request for services, which is the offer to contract, and the performance of the requested services, which is the acceptance of the offer. . . . As to services performed by a member of a family on behalf of another member of the same family, there is a presumption, which grows weaker as the relationship recedes, that the services are rendered gratuitously, from

-3-

motives of affection and duty, and to entitle one in that situation to recover compensation therefor, the burden is upon them to overcome the presumption by showing either an expressed contract or such exceptional facts and circumstances as will establish an intention on the part to charge and on the other part to pay, notwithstanding the relationship of kinship. . . . Where one renders services to another in the hope or expectation of a legacy, devise, or other provision by will for his benefit, without any contract, express or implied, but relying solely upon the generosity of the person for whom such services were rendered, he cannot recover for such services because of the failure of such person to make such testamentary provision in his behalf. . . .

Therefore, *if* the plaintiffs establish that the decedent expressly or impliedly requested the services, *and if* plaintiffs prove that they rendered those services with the expectation that they were to be paid in some manner for those services, then a contract is made out entitling the plaintiffs to recover against the estate for the reasonable value of those services. This contract must be proven in the face of the "Dead Man's" statute (T.C.A. 24-1-203) and the hearsay rule.

*Cobble v. McCamey*, 790 S.W.2d 279, 281-82 (Tenn. Ct. App. 1989) (emphasis in original; citations and quotations omitted); *see also Cotton v. Estate of Roberts*, 337 S.W.2d 776, 780 (Tenn. Ct. App. 1960). Thus, "to establish a claim against an estate for services rendered to the decedent, some form of contract must be established." *Estate of Nease v. Sane*, No. 03A01-9104-CH-00150, 1991 Tenn. App. LEXIS 856, at *3 (Tenn. Ct. App. Nov. 1, 1991).

Shirley argues that the proof establishes that a contract existed between her and Sam. She asserts that the record "is replete with reference to the deceased's intention to take care of [her] subsequent to his death." Indeed, several friends and acquaintances of the couple testified at trial that Sam on numerous occasions stated his intention to "take care of" Shirley. Debbie Glenn, a co-worker and personal friend of Shirley and Sam, testified that Sam told her that "Shirley is going to be taken care of, she knows she's going to be taken care of. . . . Everybody knows that." Pat Cloud, who is also a close personal friend of the couple, similarly testified that Sam told many people that "Shirley will never have to worry about a thing if something happens to me. It's all been taken care of." According to Doyle Cloud, Pat's husband, "Sam told . . . everybody that was close to Sam that Shirley was taken care of for the rest of her life. I mean, he made that point time and time and time again." A friend of Sam's, Dot Pridgen, testified that Sam told her that his "estate was supposed to be divided four ways and the house was supposed to be for [Shirley] and Bo [the dog] to live in for their lifetime." Kelly Schulze, Shirley's daughter, testified that Sam told her that Shirley "would always get taken care of," and that Shirley was to share Sam's estate with his three sons and "keep the house" that she lived in with Sam. Shirley testified that she gave up her home, her furniture, and job opportunities to return to Sam in 1990 on the condition that they would remain together for the rest of their lives. She stated that she would not have returned to him "if he had told me or if I knew that upon his death, I was going to be out on the street, penniless, no sir. Had I known that, I would never had done that."

This Court has previously considered cases in which a person who provides personal services to the deceased seeks compensation from the estate for companionship and nursing care without proof of some implied contract or expectation of monetary payment. *See Matthews v. Wolfe (In re: Wolfe)*, No. 03A01-9808-PB-00249, 1999 Tenn. App. LEXIS 200 (Tenn. Ct. App. Mar. 24, 1999); *Estate of Nease v. Sane*, No. 03A01-9104-CH-00150, 1991 Tenn. App. LEXIS 856 (Tenn. Ct. App. Nov. 1, 1991). In *Estate of Nease*, the claimant lived with the decedent for approximately fifteen years and took care of him when he suffered from severe diabetes, which resulted in the amputation of both of his legs, and a serious heart condition, which required heart by-pass surgery. *Estate of Nease*, 1991 Tenn. App. LEXIS 856, at *2-*3. The trial court disallowed the claim against the estate for compensation for companionship and nursing care provided to the decedent. The appellate court upheld disallowance of the claim, finding the evidence insufficient to establish a contract for services. The appellate court stated that "[i]t is apparent from the record that the parties simply lived together, ostensibly as man and wife, for their own mutual benefits." *Id.* at *5.

In *Wolfe*, the claimant denied any romantic relationship with the decedent, but nevertheless cared for him by visiting his home daily to cook, clean, and help with various household duties. She also drove him to the store and doctors' appointments. After his death, the claimant sought compensation from the estate for services rendered to the decedent. The claimant testified that the deceased said that he would "take care of" her if she would take care of him. *Wolfe*, 1999 Tenn. App. LEXIS 200, at *1-*2. Quoting *Cotton*, the court found that promises of a decedent to "take care of" a person who provides services are "ambiguous, vague, and indefinite, and [do] not prove the elements of a contract." *Id.* at *10. Consequently, the court in *Wolfe* held that there was insufficient evidence of a contract, and that the claimant's action rested solely on her hope of being rewarded in the decedent's will. Because the claimant could not recover for the decedent's failure to provide for her in his will, her claim was disallowed. *Id.* at *11-*12.

Shirley argues that her situation is distinguishable from *Estate of Nease* and *Wolfe* because she submitted into evidence the testimony of several witnesses regarding Sam's intentions with respect to her welfare. She emphasizes the testimony of Dot Pridgen and Kelly Schulze to establish that Sam wanted her to receive a share in his estate and have a life estate in his house after his death.

Although there is indeed abundant testimony regarding Sam's intentions, it nevertheless amounts to vague, indefinite expressions of an intent to "take care of" Shirley, rather than an intent to compensate her with pay for her services.[1] *See Cotton*, 337 S.W.2d at 779. Though the evidence at trial showed that Shirley provided a variety of personal services for Sam, it is clear that the two lived together "ostensibly as man and wife, for their own mutual benefit." *Estate of Nease*, 1991

---

[1]Dot Pridgen's testimony was more specific, that Sam told her the estate would be divided four ways and Shirley would receive a life estate. However, rather than evidencing an intent to compensate Shirley with pay for her services, it indicates an intent to make a will with a devise or bequest to Shirley. The evidence is clearly insufficient to establish a contract to make a will, and this is not argued on appeal. *See* Tenn. Code Ann. § 32-3-107(a) (stating that a contract to make a will can be established only by an express provision in the decedent's will or a written contract to that effect).

Tenn. App. LEXIS 856, at *5. Moreover, evidence that Sam intended for Shirley to share in his estate with his children and to continue to live in his house is evidence that he may have considered including Shirley in his will. However, in the circumstances in this case, there can be no recovery for services rendered based on "the failure of such person to make such testamentary provision in [her] behalf." **Cobble**, 790 S.W.2d at 282 (quoting **Cotton**, 337 S.W.2d at 780); *see also* Tenn. Code Ann. § 32-3-107(a) (2001). All remaining issues raised on appeal are pretermitted. Under these circumstances, we must reluctantly affirm the trial court's disallowance of Shirley's claim.

The decision of the trial court is affirmed. Costs are taxed to the appellant, Shirley Schulze, a/k/a Shirley Schulze Vires, and her surety, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE